{¶ 30} I respectfully dissent from the majority's analysis and disposition of appellant's assignment of error.
 {¶ 31} In February 2004, Lance Chaney was identified as an independent witness. He was discovered after he responded to an ad that had been posted by Johnson at a convenience store located near the site of the accident. The ad showed a picture of Johnson's car and requested a reply from anyone who had seen the accident in question.
 {¶ 32} On April 21, 2004, the parties took Chaney's deposition. When asked what he recalled seeing, Chaney testified:
 {¶ 33} "[Eitle] was going through the — I think she was trying to make the yellow light. She got caught under the red light. The red light might have been red for maybe a second, maybe a second, because [Johnson] was under the light and in the intersection going across Upton * * * while it was green." *Page 9 
 {¶ 34} On May 24, 2004, Eitle filed a "motion to bifurcate the cause for determination of liability first." The motion was granted.
 {¶ 35} Nearly two years later, on March 8, 2006 — about a week before the March 13, 2006 trial on the bifurcated issue of liability — co-counsel for Johnson filed the original transcript of the Chaney deposition with the trial court. That same day, she attempted to serve Chaney with a subpoena to appear and testify at the trial. Service was unsuccessful, however, because the address indicated on the subpoena — the address that Chaney gave as his own at deposition — was no longer valid.
 {¶ 36} On the Friday before the Monday trial, Johnson's counsel met with Chaney. At that time, it was Johnson's counsel's understanding that Chaney would appear at trial to testify.
 {¶ 37} On the morning of trial, Johnson's counsel notified the trial court that he was unable to locate Chaney, and, for that reason, requested that Chaney's deposition be admitted at trial in lieu of his live testimony, pursuant to Civ.R. 32(A)(3). Eitle's counsel objected to admission of the deposition on the grounds that Chaney was not properly served with a subpoena. At the same time, Eitle's counsel, Peter Munger, clearly recognized that Chaney was unlikely to testify in person, stating on the record:
 {¶ 38} " * * * Three weeks ago we get a phone call, Mr. Westmeyer [Johnson's counsel] has found an independent witness after putting an address on a bulletin board at a carry-out somewhere in the City of Toledo. So I quickly took this young man's deposition and he's not goingto appear in this courthouse because he's got a history of *Page 10 some problems which would not encourage him to come into thiscourthouse." (Emphasis added.)
 {¶ 39} Those problems, it turns out, consisted of pending felony charges against him for which there was an outstanding arrest warrant. According to Johnson's counsel, who eventually made telephonic contact with Chaney during the lunch hour on the date of trial, "* * * I could not convince him to come because he doesn't want to go to jail."
 {¶ 40} The trial court pointed out yet another reason to believe that Chaney would not appear to testify when it stated: "[Chaney] wants Mr. Westmeyer to pay him money to be here and therefore he's refused to come."
 {¶ 41} Ultimately, the trial court denied Johnson's motion to admit Chaney's deposition. Apparently, the judge's reason for doing so was that Johnson's counsel had failed to brief the matter prior to trial. On this issue the transcript relevantly provides the following testimony by Eitle's counsel, attorney Munger:
 {¶ 42} "* * * Your Honor will recall you held a pretrial conference in this very courtroom three weeks ago. Mr. Westmeyer raised the issue then. You were very nice in allowing him an opportunity to submit a brief on that issue; you gave him a deadline to do so of two weeks ago. You were also courteous to allow me one week thereafter to file response brief.
 {¶ 43} "Mr. Westmeyer has never filed any such brief and I never, therefore filed any opposition brief. So I was imagining that he had realized that this was a dead issue, we would not be pursuing this, and indicate as to this surprise — " *Page 11 
 {¶ 44} Johnson's co-counsel, Rhonda Hall, acknowledging the matter of the briefing, contributed the following:
 {¶ 45} "Your Honor, I was present at the last hearing. I know there was an issue of whether the Brief was going to be submitted. I tried to attempt to contact Mr. Westmeyer. He was gone so I believe my counterpart, Steve Long, came over to the Court to ask if I could have an additional time period to respond to the Brief and to file a Brief with regards to submitting the deposition testimony. However, at that time it really wouldn't have been right because of the fact that you have to attempt to procure the witness. * * *"
 {¶ 46} And finally, the following colloquy transpired between the Court and attorney Westmeyer:
 {¶ 47} "THE COURT: I asked you to discuss this two weeks ago so one, I could properly study it and ponder this decision, and not on the day of the jury, and I find that's almost contemptuous to the Court.
 {¶ 48} "MR. WESTMEYER: We were trying to locate this guy as of yesterday. If we could produce him we would. We can't; we have done everything.
 {¶ 49} "THE COURT: But I don't have the brief.
 {¶ 50} "* * *
 {¶ 51} "THE COURT: * * * I think it's not admissible and you're free to have me overturned." *Page 12 
 {¶ 52} At trial, the following evidence was adduced. Johnson testified that he and Eitle were involved in the collision after he had stopped for the red light southbound on Upton and proceeded out into the intersection when the light changed to green. A passenger in Johnson's car, Christopher Boone, also testified, but he indicated that his eyes were closed at the time of the collision, so he had no knowledge about the color of either driver's light at the time of the impact. Eitle testified that the accident happened as she was proceeding eastbound on Bancroft through a green light, and that Johnson's car t-boned her.
 {¶ 53} At the conclusion of the case, the jury unanimously found that neither party had established by the greater weight of the evidence that the other party was negligent and proximately caused the accident.
 {¶ 54} As indicated by the majority opinion, decisions about whether or not to admit evidence are within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. Coffey v. Dolgencorp, Inc., 3d Dist. Nos. 4-06-25, 4-06-36,2007-Ohio-2274, ¶ 26. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. "However, `even where a trial court abuses its discretion in the admission of evidence,' a reviewing court will not reverse unless the error affected a substantial right of the party at issue." Coffey, supra, citing State v. Lundgren (1995),73 Ohio St.3d 474, 486, Evid.R. 103(A), and Civ.R. 61. *Page 13 
 {¶ 55} Johnson argues that the trial court erred and abused its discretion to Johnson's prejudice when it refused to allow Chaney's deposition testimony into evidence. Civ.R. 32, which provides guidelines for the use of depositions in court proceedings, relevantly states:
 {¶ 56} "(A) Use of depositions
 {¶ 57} "Every deposition intended to be presented as evidence must be filed at least one day before the day of trial or hearing unless for good cause shown the court permits a later filing.
 {¶ 58} "At the trial * * *, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition * * *, in accordance with any one of the following provisions:
 {¶ 59} "* * *
 {¶ 60} "(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: * * * (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena, or * * *(f) that the oral examination of the witness is not required; or (g) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used." *Page 14 
 {¶ 61} Here, there is no question that Johnson and his counsel made repeated and vigorous efforts to locate Chaney and to compel his attendance at trial via subpoena and by persuasion. None was successful. Chaney, the only independent witness in this case, simply refused to appear.
 {¶ 62} Chaney's deposition was timely filed more than one day before trial. Civ.R. 32(A). Because the deposition consisted entirely of testimony elicited by cross examination of Eitle's counsel, oral examination of Chaney at trial was not required, and use of the deposition against Eitle would have been wholly in conformity with Civ.R. 32.
 {¶ 63} Under the circumstances of this case, where the parties were allowed to present only their own directly conflicting, self-serving, testimony (which left the jury unable to determine who was at fault in this case), the admission of additional evidence in the form of independent, third-party, eye-witness testimony could only have helped the jury reach an informed and fair result. Even if the jury were ultimately to have disregarded the evidence — as is, of course, their prerogative — neither party would have been unfairly prejudiced as a result of its admission. In reaching these conclusions, I note that the trial court never made any finding to the contrary. Instead, the trial court based its refusal to admit the contested evidence on the fact that Johnson's counsel had failed to brief the issue. In rejecting potentially critical evidence, not on any substantive ground, but simply because a party failed to brief the matter of its admission, the trial court, in my opinion, acted unreasonably and arbitrarily, and, in doing so, abused its discretion. In *Page 15 
effect, the trial court imposes what likely was a severe evidentiary sanction for the failure to brief what was, at root, a pretty simple issue.
 {¶ 64} Arguing against this conclusion, Eitle states that Evid.R. 804 precludes the use of Chaney's deposition because Chaney was not shown to be "unavailable" within the meaning of the rule. I disagree.
 {¶ 65} Evid.R. 804 sets forth exceptions to the rule disallowing hearsay when a declarant is unavailable to testify. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In the instant case, Chaney's deposition testimony should have been admitted in place of — and in essence would have been — his trial testimony. Therefore, it would not be considered "hearsay." Cf., Fitzwater v. Speco Corp. (Oct. 26, 1992), 2d Dist. Nos. 2916, 2919 (holding that deposition testimony in that case was a statement made by the declarant "in his testimony" and, therefore, was not "hearsay"); see also, Green v. Toledo Hosp. (2002),94 Ohio St.3d 480 (declining to address issue of whether witness was "unavailable" pursuant to Evid.R. 804(B)(1), where deposition testimony was determined to be admissible under Civ.R. 32).
 {¶ 66} For all of the foregoing reasons, I would find appellant's assignment of error well-taken. *Page 1